\*\*E-Filed 3/4/2011\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| C&C JEWELRY MANUFACTURING, INC., <br><br>     Plaintiff, <br><br> v. <br><br> TRENT WEST, <br><br>     Defendant. <br><br> And Related Counter Claims | Case No. 5:09-cv-01303-JF <br><br> ORDER[1] DENYING C&C'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS <br><br> [re: document no. 124] |

Plaintiff and Counter-Defendant C&C Jewelry Manufacturing, Inc. ("C&C") seeks leave to amend its invalidity contentions. The Court has considered the moving and responding papers and the oral argument presented at the hearing on February 25, 2011. For the reasons discussed below, the motion will be denied.

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:09-cv-01303-JF
ORDER DENYING C&C'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS
(JFLC2)

## I. BACKGROUND

C&C filed the instant action on March 25, 2009, seeking *inter alia* a judicial declaration that seven patents owned by West are invalid and unenforceable. The patents in suit generally relate to methods for making jewelry from tungsten carbide. On May 18, 2009, West answered and filed counterclaims alleging that jewelry rings manufactured by C&C infringe its patents.

C&C submitted its invalidity contentions as required by this Court's Patent Local Rules. West twice stipulated to permit C&C to amend these contentions, first on February 3, 2010 and again on April 13, 2010. On November 23, 2010, C&C filed the instant motion for leave to amend for a third time, seeking to include references to five patents, two printed publications, and evidence of prior use of West's inventions. West contends that C&C's motion is untimely, prejudicial, and made without good cause.

## II. DISCUSSION

"The Northern District of California has adopted local rules that require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro Intern., Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). Patent Local Rule 3-3 requires that, "[n]ot later than 45 days after service upon it of the 'Disclosure of Asserted Claims and Infringement Contentions,' each party opposing a claim of patent infringement, shall serve on all parties its 'Invalidity Contentions.'" Pat. L.R. 3-3.[2] Invalidity contentions must contain *inter alia* "the identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious." Pat. L.R. 3-3(a).

Amendment of invalidity contentions is governed by Patent Local Rule 3-6, which reads in relevant part as follows:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Nonexhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: (a) a claim

---

[2] Because this action was pending when the most recent amendments to the Patent Local Rules took effect on December 1, 2009, the prior version of the Patent Local Rules applies. *See* Pat. L.R. 1-4. However the prior and current versions of Patent Local Rules 3-3 and 3-6 are identical.

construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Pat. L.R. 3-6.

When a court examines the question of good cause to amend invalidity contentions, the "critical issue" is whether the moving party has exercised diligence in discovering the prior art. *Streak Products, Inc. v. Antec, Inc.*, 2010 WL 3515752, at *1 (N.D. Cal. Sept. 8, 2010). "Other factors relevant to this inquiry . . . include the relevance of the newly-discovered prior art, whether the request to amend is motivated by gamesmanship, and the difficulty of locating the prior art." *West v. Jewelry Innovations, Inc.*, 2008 WL 4532558, at *1 n.5 (N.D. Cal. Oct. 8, 2008) (internal citation and quotation marks omitted). "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Id*. (internal citation and quotation marks omitted).

C&C asserts that good cause exists in this case because it recently discovered material prior art despite earlier diligent efforts. The declaration of C&C's counsel, John Fischer, states as follows:

> The pursuit of evidence by CCJM has been continuous and diligent. Multiple international searches have been performed by in-house personnel, professional search providers, and a foreign patent office. CCJM's search efforts initially focused on various prior art databases, including use of the Internet. Eventually a third-party company was hired to do an international "on-the-ground" search in which they would actually identify, locate and interview potential witnesses. Although this work went on for months, none of these efforts, however, turned up the information that CCJM now seeks to use to supplement its invalidity contentions.

Fischer Decl. ¶ 3. Fischer asserts that C&C recently pursued an avenue of investigation based upon information obtained during the July 2010 deposition of Defendant West. *Id*. ¶ 11. C&C questioned West about his handwritten notes referring to "Joe" at "NEDC," but West could not recall who that might be. *Id*. C&C suspected that "Joe" might be Joseph Almeida, president of New England Die Company, and contacted Almeida after West's deposition. *Id*. ¶ 12. Almeida stated that he recalled having seen a hard metal jewelry collection at a convention in Connecticut

3

1   in the mid-1980s. *Id*. In August 2010, C&C engaged a consultant in Switzerland to assist in
2   tracking down hard metal manufacturers that might have been involved in the production of such
3   a collection. *Id*. ¶ 14. In September 2010, the Swiss consultant identified Swiss Patent No.
4   658168 to Peter Siegrest and Japanese Patent Application S55-44533 to Tanase Teruyoshi. With
5   the aid of the Swiss expert, C&C also discovered that Diametal, a carbide finishing company
6   located in Switzerland, had sintered carbide jewelry parts that had been made years earlier. *Id*. ¶
7   17. Other discoveries flowing from the Swiss expert's efforts included a brochure advertising the
8   "Everty" line of jewelry; the Ceratizit line of jewelry; and a German language book referred to as
9   the "Hartmetall Reference." *Id*. ¶¶ 22-25. The Hartmetall Reference mentions Austrian Patent
10  No. 333067 to Dr. Wolfgang Schedler and Austrian Patent No. 284477 to Dr. Franz Kolbl.

11       C&C seeks to amend its invalidity contentions to add these materials, asserting that: the
12  Siegrist patent and the Teruyoshi application disclose methods for manufacturing jewelry articles
13  containing a predominant amount of tungsten carbide; the Kolbl and Schedler patents disclose
14  the use of hard metals for annular jewelry articles; the Hartmetall reference discloses a method
15  for manufacturing sintered tungsten carbide articles including annular jewelry; and the Diametal,
16  Ceratizit, and Everty evidence demonstrates prior use of the patented inventions. C&C also
17  seeks to add a U.S. Design Patent issued to Sager and cited in a recent decision by the Board of
18  Appeals and Interferences as a basis for rejecting a West patent application containing claim
19  language similar to that of the patents-in-suit; it is not clear how C&C became aware of the Sager
20  patent.

21       West disputes C&C's characterization of these materials and has filed objections to and a
22  motion to strike all references to them. Under this Court's Civil Local Rules, "[a]ny evidentiary
23  and procedural objections to the motion must be contained within the [opposition] brief or
24  memorandum." Civ. L.R. 7-3(a). The opposition brief is limited to twenty-five pages of text.
25  *Id*. West's objections and motion to strike are procedurally improper because they were filed as
26  separate documents rather than being incorporated into West's opposition brief. However,
27  West's opposition brief, objections, and motion to strike together total less than twenty-five
28  pages. Accordingly, while West violated the letter of the local rule, he did not violate its spirit.

1    Under these circumstances, the Court will exercise its discretion to consider the objections and
2    motion to strike.
3        While West's objections are well-taken in large part, the Court need not address them
4    explicitly, because even if all of the material submitted by C&C is considered, C&C has failed to
5    demonstrate good cause for amendment. As West points out, his July 2010 deposition did *not*
6    provide C&C with any information related to the subject materials. To the contrary, when C&C
7    questioned West about his handwritten notations regarding "Joe" and "NEDC," West stated
8    unequivocally that he did not remember anything about either. van Ausdall Decl., Exh. D, West
9    Depo. 130:12-132:16. Without any assistance at all from West, C&C's counsel surmised that
10   "Joe" was Joseph Almeida of New England Die Company. Since West's notes were produced in
11   April 2010, van Ausdall Decl. ¶ 6, C&C could have made the same surmise at any time
12   thereafter. C&C asserts that it was West's very lack of response during his deposition that
13   caused C&C to "dig deeper." Reply at 4. The Court fails to follow this logic. Based upon this
14   record, it appears that C&C could have begun investigating the Joe/NEDC notation three months
15   prior to the West deposition. In fact, West's notes included an "800" telephone number for
16   NEDC, which remains a good number for New England Die Company. *See* van Ausdall Decl. ¶
17   7. Moreover, even accepting C&C's argument that the West deposition somehow prompted
18   C&C to contact Almeida, C&C fails to explain why it waited more than a year after commencing
19   this lawsuit to schedule the deposition. Because C&C discovered the subject materials so late in
20   the litigation, it set the instant motion for hearing after the close of fact discovery.
21       C&C argues that "[h]indsight is always twenty-twenty," and points to the Fischer
22   declaration as evidence of its extensive investigative efforts during the first year of the litigation.
23   Fischer states conclusorily that "[t]he pursuit of evidence by CCJM has been continuous and
24   diligent," but he describes such pursuit only in the most general of terms. Fisher Decl. ¶ 3.
25   Fischer offers no specifics with respect to C&C's "multiple international searches," and the
26   "numerous technical references and publications" discovered thereby. The Court concludes that
27   C&C's showing is insufficient to establish diligence. Accordingly, and in light of the advanced
28

stage of the instant litigation, its motion will be denied.[3]

## III. ORDER

C&C's motion for leave to amend invalidity contentions is DENIED.

DATED: 3/4/2011

_____
JEREMY FOGEL
United States District Judge

---

[3] In light of this conclusion, the Court need not reach West's argument that the subject items are not material to this litigation. However, even if the Court were to conclude that C&C was diligent, it nonetheless would deny the motion in light of the prejudice to West resulting from the need to reopen discovery and potentially redepose fact and expert witnesses.